| | | |
|---|---|---|
| **JEFFREY H. BURRIS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 3:14-cv-01546** |
| **v.** | ) | **Judge Haynes/Brown** |
| | ) | |
| **BRIDGESTONE AMERICAS, INC., et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**To: The Honorable William J. Haynes, Jr., United States Senior District Judge.**

## REPORT AND RECOMMENDATION

Before the court are Plaintiff's Motion for Judgment on the Administrative Record (Doc. 23) and Defendant's Motion for Judgment on the Administrative Record (Doc. 25), both of which were filed on January 5, 2015. For the reasons explained below, the Magistrate Judge **RECOMMENDS** that Plaintiff's Motion for Judgment on the Administrative Record (Doc. 23) be **DENIED** and that Defendant's Motion for Judgment on the Administrative Record (Doc. 25) be **GRANTED**.

## I.      INTRODUCTION AND BACKGROUND

Plaintiff filed his Complaint on July 28, 2014. (Doc. 1) The action was referred to the Magistrate Judge on January 12, 2015, "to hear and determine any pretrial issues, motions, including discovery matters, to conduct any necessary conferences and hearings and to submit a report and recommendation for disposition of any motion filed under Fed. R. Civ. P. 12, 15, 56, and 65." (Doc. 27)

Plaintiff was employed by Defendant from 1989 to February 2010. (Doc. 21, p. 52, ¶¶ 2, 4) While working at Bridgestone, Plaintiff sustained injuries to his head and shoulder in 2003

and to his finger in 2009. (Doc. 24, p. 1) Plaintiff suffered a breakdown stemming from his workplace injuries in 2010, which led to diagnoses of major depression and post-traumatic stress disorder ("PTSD"). (Doc. 1, ¶¶ 4-5) Plaintiff made a claim for Disability Retirement on August 9, 2011. (Doc. 1, ¶ 9) That claim was denied by the Disability Committee on January 10, 2013. (Doc. 21, pp. 26-27) Plaintiff appealed the Disability Committee's decision to the Pension Board ("the Board"), which denied Plaintiff's claim on September 30, 2013. (Doc. 21, pp. 1-2)

Plaintiff's claim for Disability Retirement benefits was denied by the Board because the Board found that "the administrative record does not demonstrate that [Plaintiff's] conditions prevent [him] from being *physically* able to perform the work of any classification in the local plant, as required by the Plan definition of 'Disabled.'" (Doc. 21, p. 1) The Retirement plan titled "the Bridgestone Americas, Inc. Non-Contributory Pension Plan" ("the Plan") defines "Disability" or "Disabled" as follows:

> An Employee shall be deemed to be permanently and totally disabled only if, prior to the month in which the Employee's 62nd birthday occurs: (a) ***he has been totally disabled by bodily injury or disease so as to be prevented thereby from being physically able to perform the work of any classification in the local plant***, and (b) such total disability shall have continued for 5 consecutive months, and, in the opinion of a qualified physician designated by the Pension Board, will presumably be permanent and total during the remainder of his life.

(Doc. 26, Ex. B, p. 11)(emphasis added) The Board appears to concede that Plaintiff has an injury, but not one that would render him "physically [un]able to perform the work of any classification in the local plant." (Doc. 21, p. 1)

In response, Plaintiff has filed a lawsuit against Defendant for wrongful denial of benefits under the Employee Retirement Income Security Act of 1974 ("ERISA"), specifically under 29 U.S.C. § 1132(a)(1)(B) for Disability Retirement benefits. Plaintiff argues that the Disability Committee's decision to deny his benefits claim was arbitrary and capricious, and is not

supported by the medical proof and evidence in the Administrative Record. (Doc. 24, p. 3) Plaintiff believes that he is disabled under the Plan's definition of disability. (Doc. 24, p. 6)

## II.      STANDARD OF REVIEW

A denial of benefits under an ERISA plan "is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115 (1989). If a plan gives the administrator such discretion, the administrator's decision is reviewed under the "highly deferential arbitrary and capricious standard." *Miller v. Metropolitan Life Ins. Co.,* 925 F.2d 979, 983 (6th Cir.1991).

Here, Defendant is authorized to determine the scope of the Board's authority and duties as the plan administrator. The Board has "sole and absolute discretion to interpret the provisions" of the Plan. (Doc. 26, Ex. B, p. 208) Therefore, the arbitrary and capricious standard of review applies. Under this standard, a potential conflict of interest will be examined as a factor when determining whether there was an abuse of discretion. *Firestone Tire & Rubber Co.,* 489 U.S. at 115 (1989).

## III.      ANALYSIS

### A.      Terms of the Plan

Again, under the Plan's definition of "disability" an employee must be "totally disabled by bodily injury or disease so as to be prevented thereby from being physically able to perform the work of any classification in the local plant." (Doc. 26, Ex. B, p. 11)

Plaintiff argues that Defendant wrongly denied his claim for benefits due to a "strained interpretation" of the Plan's terms, specifically the Plan's definition of "disability." (Doc. 24, p.

9) Plaintiff asserts that Defendant:

> is attempting to rewrite the terms of the Plan to make a requirement that the inability to perform the work of any classification in the local plant be a result of muscular or skeletal injury or that ***excludes psychological or mental injuries that have physical manifestations***.

(Doc. 24, p. 14)(emphasis added)

If the terms of the Plan are not ambiguous, they must be given their "plain meaning in an ordinary and popular sense." *Farhner v. United Transp. Union Discipline Income Protection Program*, 645 F.3d 338, 343 (6th Cir. 2011).

Here, the Magistrate Judge finds that the Plan's terms are not ambiguous. The terms require that one is "physically able to perform the work of any classification in the plant." The Magistrate Judge finds that having a "physical [ability] to perform . . . work" does not pertain to a psychological or mental ability.

Additionally, Plaintiff argues that Defendant wrongfully seeks to add an eligibility requirement to the Plan that does not exist. (Doc. 28, p. 3) Plaintiff asserts that Defendant "wishes to interpret [the Plan] language so as to require a 'physical injury' or a 'physical disability.'" (Doc. 28, p. 3)

However, the terms of the Plan do not show that a claimant would have to be physically injured or disabled to receive Plan benefits, but rather that a claimant would have to be physically *unable to perform* the work of any classification in the local plant. The record shows that the Board denied Plaintiff's claim because "the administrative record does not demonstrate that [Plaintiff's] conditions prevent [Plaintiff] from being ***physically able to perform*** the work of any classification in the local plant," and not because Plaintiff lacked a physical injury or disability. (Doc. 21, p. 1)(emphasis added)

This raises the question of whether a mental injury or psychological diagnosis could result in a physical inability to perform work. However, as explained below, the record shows that the Board considered the Plaintiff's medical records regarding his mental status. The Board based their decision on this evidence and the record as a whole. As such, even if the evidence could point to disability, the Magistrate Judge finds that Defendant's decision was not arbitrary and capricious.

Plaintiff's arguments that his claim for benefits was denied due to a "strained interpretation" of the Plan and that Defendant sought to add an eligibility requirement of a "physical injury" fail. The Magistrate Judge finds that the Plan unambiguously requires a physical inability to perform work, and the record shows that the Board denied Plaintiff's claim based on Plaintiff's physical ability to perform work.

### B.    Evidence

"A decision to terminate benefits is not arbitrary and capricious if it was the product of deliberate principled decision making and based on substantial evidence." *Arquilla-Romeo v. Metropolitan Life Ins. Co.*, 980 F.Supp.2d 847, 850 (N.D. Ohio 2013)(citing *Killian v. Healthsource Provident Administrators, Inc.*, 152 F.3d 514, 520 (6th Cir. 1998)). Such a decision will not be deemed arbitrary and capricious so long as "it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome." *Haus v. Bechtel Jacobs Co., LLC*, 491 F.3d 557, 561-62 (6th Cir. 2007)(quoting *Davis By and Through Farmers Bank & Capital Trust Co. of Frankfurt, Ky. v. Ky. Fin. Cos. Ret. Plan*, 887 F.2d 689, 693 (6th Cir. 1989)). "Although the evidence may be sufficient to support a finding of disability, if there is a reasonable explanation for the administrator's decision denying benefits in light of the plan's

provisions, then the decision is neither arbitrary nor capricious." *Schwalm v. Guardian Life Ins. Co. of America*, 626 F.3d 299, 308 (6th Cir. 2010)(citation omitted).

However, "the deferential standard of review does not mean courts should 'rubber stamp' a plan administrator's decision—a court must review the quantity and quality of the medical evidence on each side." *Schwalm*, 626 F.3d at 308.

A court may consider only that evidence presented to the plan administrator at the time he or she determined the employee's eligibility in accordance with the plan's terms. *Schwalm*, 626 F.3d at 308. The court's review is thus limited to the administrative record. *Schwalm*, 626 F.3d at 308.

Here, the record shows that Defendant's decision to deny benefits was the result of deliberate principled decision-making and was based on substantial evidence, and thus was not arbitrary and capricious. The record shows that Defendant did not ignore medical evidence presented to it, but rather concluded, based on examination of objective evidence, that Plaintiff was not disabled according to the Plan's definition. The Board "reviewed all material submitted to it." (Doc. 21, p. 1) Those submitted materials included medical records and reports from Plaintiff's treating psychiatrist Dr. Michael Murphy, treating counselor Peggy Beasley, treating psychiatric mental health nurse practitioner Corey Meyers, vocational expert Michael Galloway, and psychiatrist Dr. Jon Draud.[1]

Plaintiff alleges that Defendant "ignored the testimony and opinions of Dr. Murphy and Ms. Beasley," and, in essence, cherry picked evidence. (Doc. 24, p. 8) The Administrative Record contained a letter in which Dr. Murphy opined that Plaintiff "is currently completely and

---

[1] Plaintiff's medical records can be found in the Administrative Record (Doc. 21) on the following pages: 47-51, 61-72, 102-119, 126-128, 137-199, 204, 219-236, 239-280, 288-290, 298-315, 319-342, 345-397.

totally disabled by his condition and that he is not able to perform the work of any classification in the plant." (Doc. 21, p. 47) The Administrative Record also contained a letter in which Ms. Beasley opined that Plaintiff "is an individual who truly qualifies for the disability retirement benefits, particularly since his trauma occurred at the work place and also since the damaging effects seem to be permanent." (Doc. 21, p. 128) However, the record shows that those opinions were included in the Administrative Record, which was submitted to the Board.[2] The Board "reviewed all material submitted to it." (Doc. 21, p. 1) Therefore, the record shows that Defendant did not ignore the opinions of Dr. Murphy and Ms. Beasley since those opinions were submitted to and reviewed by the Board.

Additionally, the Board considered the opinion of Dr. John Draud, the Medical Director of Psychiatry & Addiction Medicine at Baptist Hospital in Nashville, Tennessee, who "review[ed] copious records and conduct[ed] a person interview of [Plaintiff] related to his disability claim." (Doc. 21, p. 204) The Administrative Record contained a letter in which Dr. Draud opined that he "see[s] no reason based on [Plaintiff's] current psychiatric symptoms why [Plaintiff] could not return to some type of meaningful employment." (Doc. 21, p. 204)

The Board upheld the Disability Committee's original finding that the Administrative Record did not establish that Plaintiff was "*physically* unable to perform work in any classification of the LaVergne, Tennessee facility where he had previously worked." (Doc. 26, pp. 7-8) Moreover, the evidence contained in the Administrative Record and considered by the Board was not so one-sided that the decision to deny benefits can be considered arbitrary and capricious. For example, the record shows that Plaintiff admits in his affidavit to "seeding yards"

---

[2] Medical records and testimony of Dr. Murphy and Ms. Beasley can be found in the Administrative Record (Doc. 21) on the following pages: 61-62, 73-119, 126-128, 137-138, 141-199, 219-242, 248-282, 288-290, 298-317, 319-342, 345-397.

for new residential construction and "bush hogging" or using a rotary mower, both of which are activities requiring physical ability. (Doc. 21, p. 54, ¶ 9) As the record shows, the Board considered this evidence when making its decision. (Doc. 21, p. 1)

Further, Defendant considered evidence regarding Plaintiff's workers' compensation claim and Social Security Disability Claim. (Doc. 26, p. 8) Although Plaintiff was awarded workers' compensation benefits and Social Security Disability benefits, those rulings are not binding on the Board, in part because the Board's definition of "disability" differs from the definitions used to decide the outcomes of Plaintiff's other two claims. *See Wical v. Int'l Paper Long-Term Disability Plan*, 191 Fed.Appx. 360, 368 (6th Cir. 2006).

Finally, Plaintiff asserts that Defendant had a potential and actual conflict of interest because Plaintiff and Defendant were engaged in litigation in a worker's compensation lawsuit. (Doc. 24, p. 5) If a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a factor in determining whether there is an abuse of discretion. *Firestone Tire & Rubber Co.,* 489 U.S. at 115. A conflict of interest can support a finding that an administrator abused its discretion only where the evidence demonstrates that the conflict actually motivated or influenced the claims decision. *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 123 (2008).

Plaintiff argues that a contemporaneous workers' compensation lawsuit between the two parties is evidence of an actual conflict of interest. (Doc. 24, p. 5) Plaintiff alleges that litigation "went on throughout [Plaintiff's] claim for benefits under the pension plan and . . . explains why [Defendant] seemed to be searching for reasons to deny [Plaintiff's] claim despite the findings of his treating doctor and counselor and everyone else involved in the case" (Doc. 24, p. 5) Plaintiff argues that if Defendant awarded benefits to Plaintiff, the outcomes of the ongoing workers'

compensation litigation would be impacted unfavorably for Defendant. (Doc. 24, p. 5) However, Defendant asserts that the Board considered the award and "did not attempt to avoid, ignore, or downplay Plaintiff's workers' compensation award." (Doc. 30, p. 5)

The Magistrate Judge is not persuaded that any such potential or actual conflict of interest motivated or influenced the claims decision here. No evidence "appear[s] on the face of the plan, . . . [is] shown by evidence of other improper incentives, . . . or [is] shown by a pattern or practice of unreasonably denying meritorious claims." *Metropolitan Life Ins. Co.*, 554 U.S. at 123.

Further, the Supreme Court stated that when evaluating how a conflict of interest should be taken into account on judicial review:

> The conflict of interest at issue . . . should prove less important (perhaps to the vanishing point) where the administrator has taken active steps to reduce potential bias and to promote accuracy, for example, by walling off claims administrators from those interested in firm finances, or by imposing management checks that penalize inaccurate decisionmaking irrespective of whom the inaccuracy benefits.

*Metropolitan Life Ins. Co.*, 554 U.S. at 117-18. As evidence that it took "active steps to reduce potential bias and to promote accuracy," Defendant asserts that it "solicited additional information from Plaintiff to include in its review," which Defendant "accepted and considered." (Doc. 30, pp. 3-4) Additionally, Defendant asserts that the Board deferred its benefits determination upon learning that Plaintiff had a pending claim for Social Security Disability Benefits in an effort "to ensure all relevant information was reviewed and considered." (Doc. 30, p. 4) In a letter dated August 8, 2013, Defendant requested that Plaintiff provide to the Board a copy of the U.S. Social Security Administration's decision, which would be "merely another piece of evidence for the Board's consideration." (Doc. 21, p. 19) Thus, the Magistrate Judge finds no conflict of interest to support a finding the Defendant abused its discretion.

Therefore, the Magistrate Judge finds that the Board's decision to deny benefits was not arbitrary and capricious.

## IV.   RECOMMENDATION

For the reasons explained above, the Magistrate Judge **RECOMMENDS** that Plaintiff's Motion for Judgment on the Administrative Record (Doc. 23) be **DENIED** and that Defendant's Motion for Judgment on the Administrative Record (Doc. 25) be **GRANTED**.

Under Rule 72(b), Fed. R. Civ. P., any party has fourteen (14) days, after being served with a copy of the Report and Recommendation (R&R) to serve and file written objections to the findings and recommendation proposed herein. A party shall respond to the objecting party's objections to this R&R within fourteen (14) days after being served with a copy thereof. Failure to file specific objections within fourteen (14) days of receipt of this R&R may constitute a waiver of further appeal. 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 155 *reh'g denied*, 474 U.S. 1111 (1986); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2002).

**ENTERED** this the 15th day of July, 2015.

/s/Joe B. Brown
Joe B. Brown
United States Magistrate Judge